Good morning and may it please the court. My name is Matt Baca and I represent the conservation groups in this matter. With the court's permission, I'd like to reserve five minutes for rebuttal. I'll focus on three reasons the conservation groups have Article 3 standing and the right to intervene. First, the district court failed to apply the right legal standard. Second, our right to intervene now is no different than it was in the 2001 litigation in which the court granted intervention. And third, the United States can't adequately represent the conservation interests it discounts in its briefing. You think the court couldn't have been wrong in the second prong of your argument? Excuse me? You said maybe he was wrong at the second time. Oh, on the earlier litigation, we would submit that the court was right that time around, Your Honor, and the reason there was that we were able to demonstrate a clear interest that was related to the property in dispute and that would be impaired by the litigation. And the bottom line is this, and determining ownership to these rights-of-way will determine whether motorized use is permitted and encouraged in the grasslands. The ownership by the state of these easements will determine the use of the grasslands. That's correct, Your Honor, it will. That hasn't, the Nebraska Constitution provides for easements along section lines throughout the And most of them haven't been opened because there's not very many people live out there and they don't need all the roads. So if that's an example, and it's kind of a similar kind of property and has nice lakes and streams and hundreds of thousands of head of cattle and things like that, why do you believe that's going to happen? The reason, Your Honor, is that the counties have made clear in their complaints that if they prevail, they would like to open the section lines to public highway, as public highways. That's what they, that's what these are public roads, except that the ranchers have to pay the cost of the road that they put in, but it's a public road and has to be maintained by the state thereafter. And the state of the law in North Dakota now, as reflected in the plaintiff's complaints, is that the Forest Service doesn't allow motorized traffic on these, on these section lines. And so we would have something, a very different state of the world, if the plaintiffs were to prevail, in that they would be permitted and authorized to open up the section lines. There could be, Your Honor, perhaps, but they would be, Your Honor, if they receive title to these section lines, they would be a long way now, a long way there. Now we would certainly continue to oppose their opening the grasslands to motorized use, and there may be a form in which we could contest that, but if they have the legal right to easements running over the entire 1 million acres of the grasslands, they would be very close, and I believe their position is that they could immediately open the section lines to motorized use. What you really think is that there might be some oil in those hills, and that could change the picture radically, right? That's very possible, Your Honor, and I point the court on that point specifically to the state's complaint, in which they discuss exactly that, that one of the issues they have... That would be... Yes, Your Honor, that would be... Give me an appendix page number. Of course. This is your first amended complaint you're talking about? Yes, this is the state's first amended complaint. That's appendix pages 7 to 10, and that's paragraphs 38 to 64. There's a long discussion in the state's complaint about their desire to open up the... About their desire to use the section lines as routes to allow access for oil and gas leases. Now, that would be a very different scenario than what we have now, which is that those section lines are, in fact, closed. And Your Honor, the... If I could point to Jan Swenson's declaration, she's a member of Badlands Conservation Alliance and Wade Schaefer. Now, they, between the two of them, have used roadless areas throughout the grasslands for many years, for decades even, and... How do they do that? What bothers me is, what are you gonna contribute to this case? Sure, Your Honor. There's parties that you can't contribute as amicus. Of course. Absolutely. As amicus, we wouldn't be able to submit evidence, and that's exactly what we'd like to be able to do here in our... This is a law question. Sure. Well, a good example is the United States amended motion to dismiss, which they recently submitted on their first one. We submitted a brief in support, and we submitted with that evidence from our declarations about the question of federal ownership. Wade Schaefer, one of the declarants in the case, has... You don't have to be a party to do that. My understanding, Your Honor... That's under your amicus brief. If the court doesn't wanna read them, fine. My understanding was that we can't submit evidence as amicus. And the other relevant part... You haven't talked about... You're just talking about a declaration. I mean, you've got... We've got Ms. Swenson here, right? Sure. Yes, Your Honor. And there's... She's in our record, we can read it. Right. I don't see anything you can't do on a property title question. Right. Well, and there's also been... I don't understand, I think, why you want to be in there. Of course, yeah. Which is to guarantee it never ends. Your Honor, with respect, the reason that we wanna be in the case is to ensure that the government protects our interests and that we in fact... How? How? Well, so... When it's a legal question of title, it's almost certain to be decided as a matter of law prior to a trial, right? Sure, sure. Yes. What can't you do now? That you relish the opportunity to do as a party? Well, so on the question in the motion to dismiss, which is about the statute of limitations, one of the... That question is about whether the state and counties were on notice 12 years before filing the lawsuit about the government... The United States claims. Now, we do have... We believe we have evidence that we can contribute to that. And the other part is... Why wouldn't the United States wanna take advantage of that evidence if it helps their... Well, they had said that they would be alright with us intervening permissively in the lower court. You rejected their conditions, right? No, we accepted their conditions and we lost on the permissive intervention also in the district court. But, Your Honor... Why are the conditions not... Why are they nowhere to be read in the briefs? I mean, I'm sure they're in the record, but I haven't studied the record. Your Honor... If these were so easy condition... I assume that there were some limits on discovery. There were. There were some limits. And we accepted those limits. What's the record site for your acceptance? I believe we would have to look at our original brief, which is not part of the joint appendix. That would be in our motion to intervene. I believe we specified there and... Actually, you know what? I think also in the government's brief in front of this court, they also... That's the United States brief. I'm not sure of the page number, but when they... What they said was that they agreed to permissive intervention with conditions. Exactly. Yes. And they defend the district court's ruling as not an abuse of discretion. They never said that you thought those conditions were fine and dandy. That's what I wanna see. Okay. Yes, Your Honor. I'm sorry I didn't include that in the joint appendix. So I'd have to direct the court to our original briefing in the district court. But why couldn't the United States take advantage of that evidence, even if you're not a party, and adequately represent their claim that the statute of limitations has expired or whatever? Right. I suppose they could, Your Honor, but there's no guarantee that they would. And I think that's really what we're after here, is that the United States has filed an amended motion to dismiss, but this court has recognized in the Mille Lacs case, and most recently in the National Parks case, that there's no guarantee that they will continue to take that position. There's no guarantee they would use the evidence that we have, that we'd like to put before the district court. And I'd point again to the 2001 litigation, in which the government ultimately decided to settle on a very similar question we have here. You want the ability to block a settlement? We would like the ability to object to a settlement. We couldn't block a settlement, although... As a party. As a party, what we could do is object. An amicus can seek to block a settlement. Sure. What does party status get you? What party status gets us is the right to be heard on an objection to a settlement, and to have the district court review it to determine whether the settlement complies with public policy and the law. We... And the right to appeal, I suppose. And we would have the right to appeal as well. Your honors, I see I'm running into my rebuttal time. I'd like to request the remainder of my time for rebuttal. Thank you. Ms. Palachuk. Good morning, your honors. May it please the court, Emily Palachuk on behalf of the United States. I'll be taking seven and a half minutes of our time, and counsel for the plaintiffs will take the remainder. This is a Quiet Title Act claim. The appellants do not have a legally protectable interest entitled to the Dakota Prairie grasslands. In this suit, appellants in the United States want exactly the same thing, unencumbered federal ownership of these rights of way. And the United States is zealously defending its claim of title. For these reasons, the court should affirm the district court's denial of appellant's motion to intervene. Appellants are asking the court to hold that any interest in the outcome of the lawsuit is sufficient for intervention as of right under federal rule of civil procedure 24A2. But appellant's standard would blur the line between an intervener and an amicus. And it was also contrary to the Eighth Circuit's precedent, which says that to intervene as of right, a party must show that they have a recognized interest in the subject matter of the litigation, not the outcome of the litigation. The court has also said that an interest that is remote from the subject matter of the proceeding will not satisfy rule 24A. Here, appellant's conservation interests are remote and independent from the issue at hand. The subject matter of this litigation is legal title to the identified rights of ways. Just as a jury in a criminal case is asked to decide guilt or innocence without considering a defendant's possible sentence, so too is the issue of legal title divorced from the issue of the future use of that land. The management and future use of the grasslands will not be heard or decided by the district court. Any evidence that the appellants wish to of the grasslands would be inadmissible as irrelevant to the ultimate question of legal title. Here, Congress has identified the interests that are at issue in a Quiet Title Act claim. The Quiet Title... What were the conditions that you imposed on permissive intervention, which presumably would allow them to appeal from a settlement they didn't like? Your Honor, we asked the court if they were to grant intervention, impose four conditions on the appellants. The first was that they would abide by all the scheduling agreements that had already been set and any future scheduling arrangements. That the appellants would have to consult with counsel for the United States before filing any motions. Would you have a veto? Presumably, between this agreement, we would. As the district court did not grant intervention, it did not... Consultation doesn't imply a veto. Right. And so it would only be between the parties, whether the district court permitted the parties to then file a motion, it's up in the air. Because the district court did not consider these conditions, so it's unclear exactly how they would have played out had intervention been granted. Three and four. Yeah. The third condition was that the appellants would not be allowed to assert any new claims, counter claims, or cross claims of their own. And the fourth was that they would not oppose any motion by the United States to seek certification of interlocutory decisions or entry... Again. That they would not be able to object to the United States seeking certification of any interlocutory decisions for interlocutory appeals or entry of partial judgments. However, I'd like to remind the court that permissive intervention is reviewed under an abusive discretion standard, and the United States position on appeal is that the district court did not abuse its discretion when it denied permissive intervention for the same reasons that it denied intervention as of right. Because the Quiet Title Act is a limited waiver of sovereign immunity, the court should look to what Congress said in the Quiet Title Act when determining who would be a proper party to intervene under Rule 2482. And that Congress has said that a Quiet Title Act claim must involve parties who assert an ownership interest in disputed real property in which the United States claims an interest. Here, the appellants do not assert their own claim of title to the disputed property, and they do not have a legally protectable interest in the United States' claim of title. To allow them to intervene, to argue for the United States' claim of title would run contrary to the QTA's limited waiver of sovereign immunity. Furthermore, to the extent that the United States' continued ownership of the land will preserve the appellant's conservation interests, the United States... What is the controlling effect, in your view on us, of the Special Master's decision in 534 U.S. denying intervention? Apparently, on the grounds you're arguing, if you don't have an interest in the party, in the property, you can't... You have no place in a QTA. Your Honor, the Supreme Court adopted the Special Master's Report, and therefore it should be viewed as the Supreme Court's holding that derivative interests are not sufficient. The law of the land, in other words. Is that what you're saying? Correct. And it's also, if you look at what the Special Master said, he was citing other Supreme Court cases for the proposition that the Supreme Court has previously said that derivative interests are insufficient to satisfy intervention as of right under 2482. Did you cite that to the District Court? We cited that quote from the Special Master Report is... Includes the quotation... Did you argue it was controlling authority on... That there simply cannot be intervention in the Quiet Title Action? I don't believe that it's controlling authority, and I don't think that that's what we argued in our brief, but it should be considered when looking at what the Supreme Court has said about derivative interests in this case. And here, the interest that they're asserting is that the federal protection should be afforded to the grasslands, but that assumes that there's federal ownership of the land, which is the very issue to be decided in a Quiet Title Act case. Who was the Special Master in this? If you don't... Gregory E. Meggs. Gregory E. Meggs. That was not a Quiet Title Act? That was not an act... That involved Quiet Title Act claims. There were other claims that also had issue. I don't understand why it doesn't control it. Well, it's a Special Master Report. It was adopted by the Supreme Court, but they didn't issue... If you look at what the Supreme Court actually said, it said... There's one line. It says, the report of the Special Master is hereby adopted. So... This is the Alaska case now? Correct. Alaska versus United States. Turning briefly in my remaining time to the issue of adequate interest or adequate representation, this court said in Chiglo versus the City of Preston, that when dealing with Appellant's Patriot Presumption, which is what we have here, there's a presumption that the United States will adequately represent the party's interests. A party must... Can rebut that presumption only by showing a misfeasance, nonfeasance, or dereliction of duty. There's no such allegation here. Appellants have not shown that the United States has been derelict in its defensive title, nor have they shown that the appellants better represent the United States' property interest. This court has said that a federal case is a limited affair, and not everyone is invited to attend. Because the appellants lack legally protectable interest, and because their conservation interests are being adequately represented by the United States, the court should affirm, deny all the motion to intervene. Thank you. Thank you. Ms. Brooks. May it please the court. I'm Constance Brooks. I'm here today on behalf of the State of North Dakota. I'm joined by my co-counsel, Matthew Sagsveen, of the Attorney General's Office for the State of North Dakota, and I represent the Western North Dakota counties of Billings, Golden Valley, McKenzie, and Slope. If the state obtains an interest here that you request, how will that change things as we have it now? It will resolve the issue. In other words, we agree with the government in distinguishing between the issue of title and the issue of land management. And what has been, I don't wanna say a matter of confusion, I'd say a matter of controversy in recent years, and by the way, less than 12 years, is who owns title to the easement on the section lines. Because the section line statute dates to 1878, there had been an assumption in North Dakota that the section line statute reserved an easement along the section lines held by the state in trust for the public. That's part of the enabling acts. Yes, exactly. And it's fundamental to the state, it's fundamental to how the county manages land use in the county. How will it actually change? I'm not sure that I see an immediate change at all. What had changed in recent years, say within the last decade, has been a policy by the federal government to deny access along section lines for sports use, livestock grazing, for example. And so the county said, okay, we finally have to take this to court, that this is now a ripe controversy because access is being denied. But this is just a title case, as your honor is pointing out, it's not a land management case. And so I don't see an immediate impact on the land management, and that's why, from our perspective of analysis, the injury complained of by the alliance is remote and speculative. It's dependent on future actions that may or may not occur, and we don't even know where those actions may or may not occur. The affidavits and the pleading have focused on roadless areas, but we don't know that, in fact, that would be where you would have a controversy with a decision of the county, often on petition, to open a section line to a new road. But it's the assurance of continued access that's so the state said, we have to sue now. What makes now this more important than it has been in the past? I mean, what's... It was the order issued by the Forest Service in 2001, closing all section lines or closing all the national grassland to motorized vehicle use. And that was a seminal moment that arguably triggered the statute of limitations. And what state and local governments face is finding out when and if the statute of limitations is triggered. So it was the best judgment of council that it was time to sue because there was an order, a statement closing, and thereby having an adverse effect or burden on what was always perceived to be an easement. Does the state have any school lands, for instance, in these areas that are owned by the state for some purpose or another? Absolutely. The state has... Is it four sections or two sections per township? Anyway, Your Honor, it's at least two sections and... To support the school systems. Exactly. And there's a tremendous amount of drilling on those very, very sections. And the natural grasslands are unique because under the Bankhead Jones Tenant Act, one of the management objectives is development of energy resources. These are working lands. These are not set aside exclusively for conservation purposes. Conservation purposes are served, but there are other purposes too. So access is the blood of North Dakota. How have these roads that council started to mention a while ago, how have they been established across without easements of some kind? And so in the view of the state of North Dakota and the counties... When the federal government acquired them, they were there. That's exactly right. Or at least certainly the roads that we've identified in this complaint. And you always get disputes as to who built it. But I wanted to address a couple of issues raised by this court. And I think one of the important things is that counsel for the alliance stated that the alliance could contribute to the issue of statute of limitations. And I will respectfully disagree because the heart of the quiet title notice under the statute of limitations is notice that the United States gave to the state or the counties. It's not what some third party understood and perceived. It's what the United States did. And frankly, I think the United States is best capable of providing that kind of information. And I think just generally, one of the reasons that North Dakota and the counties objected to even permissive intervention is because everything raised in their motion sought to derail the case into a land management case. And it had always been the state's position that this was all about title. It was not about land management, that that was a decision to be made later or had been made prior when the case settled. And I'll also answer a question I think this court raised about how was this like the roadless rule case? The original case filed by the state of North Dakota and the counties challenging the roadless rule and the road rule and the off highway vehicle decisions focused on land management and how this would conflict with land management for oil and gas, for livestock grazing, and even motorized recreation use. And this case is not about those issues. It's strictly about the title. Yes, at some point down the future, there may be a decision disconnected from what we're doing now, what is before the court to develop a road, to open an area, but that would be subject to appropriate procedures. And we did cite the case of Sierra Club versus Hodel, and that's illustrative of how the county or the state may have a right to the road, a recognized road, but the federal government would still evaluate the impacts on the resources adjacent to the road. So there are other procedures at which the alliance would have ample opportunity to proceed. It appears that my time is basically up. If you don't have any additional questions, I will close. Thank you. Thank you, Mr. Baca. Thank you, Your Honor. There's a couple points I'd like to make. The first place I'd like to start is with the special master's report that Judge Loken asked about. And I would point the court to page 25 of that report, in which the special master says, we're talking about the Supreme Court's original jurisdiction in which Rule 24 does not apply. I think that answers that question there. It said that they would think about Rule 24 as a guide, but they explicitly said they wouldn't consider other courts' decisions, they wouldn't consider the Eighth Circuit decisions, they certainly wouldn't consider the Massouf and other relevant decisions. But the Supreme Court signed off on Rule 24 at some point in the past, so they would be bucking their point of view at that time with that argument, right? So, Your Honor, with the special master's report only, they were not considering Rule 24. Now, of course, Rule 24 generally... That's for some policy... Exactly. They have approved. Exactly. Exactly. Yes, Your Honor. And the point there, that leads me into my question, is just the plain language of Rule 24, which says we need to claim an interest relating to the property. And what we've heard from counsel just now, and what we saw in their briefs, is that they've said repeatedly, we don't have a legally protectable interest in the grasslands, but we have a legally protectable interest relating to. And that exact sort of interest has been recognized in this court's case on the past in the Massouf decision. And the idea here that we're talking about something wholly different from a land management case is just not right, because determining ownership and entitlement to use the grasslands in this litigation will determine whether they can allow motorized use on the grasslands immediately. They would be able to drive down the section lines in a way that's currently prohibited. Now, that is an impairment of an injury... Excuse me, impairment of an interest under Rule 24. The other thing that I wanted to point to briefly is counsel... And I think this underscores the point, is counsel's position on the grasslands as, quote, working lands. Now, that is the county's and the state's position that I believe would also be the government's position. And that demonstrates that nobody in this case currently represents our interests. Our interests are purely environmental and aesthetic. And the court has recognized that those are legally protectable. Those legally protectable interests stand to be impaired by this litigation. And one final point I just wanted to mention also with respect to what we would add to the case, is I'd also like to point out there are six individual road claims that McKinsey County has made. And I believe those are where our facts are likely the most salient. Jan Swenson, who I mentioned before, the declarant and member of Badlands Conservation Alliance, she's already pointed out two factual errors in the county's complaints. She's pointed out the location of stock tanks. She's pointed out federal signage. She's described grazing rights and other indications of federal ownership. Now, what our declarants have noticed and observed does, in fact, go a long way to what we can assume that has been public knowledge that the state and the counties have been aware of. So we would request, as the court did in the National Parks case, that the court reverse the denial of intervention and direct the entry of an order granting intervention. Do you oppose grazing rights on this grassland? We don't generally... I don't believe we do generally oppose grazing rights, although in some circumstances, we certainly have in the past. I know Wade Schaefer was a part of... That's the Sierra Club's member. He was a part of a grazing decision that the government made and the Sierra Club went through an appeals process of the federal government's decision there. So I would say it would be on a case by case. 30 or 40 million bison used to graze this land and didn't seem to ruin it all that much. In fact, as many of us think, it was better than before. Right. Absolutely, Your Honor. And we would say here that the harm we're concerned about is really motorized use. That's the concern of our declarants and that is what would change, in a very meaningful way, their enjoyment of the grasslands. Thank you. Thank you, counsel. The case has been well heard.